# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>OTHA MARVIN DELANY,<br><br>                         Debtor. | Chapter 7<br><br>C/A No.: 13-00446-jd |

## MOTION TO ALTER OR AMEND JUDGMENT

Debtor, by and through his undersigned counsel, respectfully moves the Court to alter or amend discrete parts of its August 12, 2025 order. Debtor makes this motion pursuant to Fed. R. Bankr. P. 9023, Fed. R. Civ. Pro. 59, and the Court's inherent authority.

At the initial hearing, Debtor argued that the Court should resolve the threshold issue of whether First Financial of Charleston, Inc. ("FFC") had standing to be heard on Debtor's Motion to Reopen. Debtor's counsel understood that the Court agreed this issue should be resolved first, and further, that an evidentiary hearing would be scheduled with proper notice to resolve remaining issues.

Notwithstanding the narrow issue to be addressed at the initial hearing, the Court's August 12, 2025 Order is being used by FFC to argue that this Court has already resolved other issues. Debtor did not have the opportunity to brief and argue those issues, and they were not before the Court. While Debtor does not believe the Court intended for its order to be used in that manner, for clarity's sake, and to avoid problems that could arise in the future with attempt to use the order for more than what it is, Debtor respectfully requests that the Court clarify the following related to two sentences of its order:

*First*, on page nine, the Court stated: "Debtor arguably lost standing to continue pursuing the State Court Litigation after he filed for Chapter 7 relief in 2013." The inclusion of this sentence is understandable in light of arguments made by FFC, but the impact of Debtor's 2013 bankruptcy on Debtor's ability to continue pursuing the State Court Action was not before the Court. For this reason, the

1

Court should clarify that it has not made any decision as to what impact, if any, Debtor's 2013 bankruptcy may have impacted Debtor's ability to pursue a class action lawsuit where the Debtor seeks to pursue not only his own individual claim, but also the claims of approximately 1,000 South Carolina class members whom he has been appointed to represent. While Debtor understands the sentence includes the word "arguably" and further does not believe the sentences should be misconstrued as a final decision binding on the parties, this Court, or other courts, Debtor respectfully submits that clarification on this issue may likely prevent others from attempting to make such arguments in the future.

*Second*, the sentence at issue is incorrect as a matter of law. The Fourth Circuit has ruled that whether a claim can be maintained by a Chapter 7 bankruptcy trustee or a debtor is a question that does not involve standing but rather is one of whether the trustee or debtor is the real party in interest entitled to pursue the claim. In *Martineau v. Weir*, the Fourth Circuit acknowledged that trial court had confused and conflated the traditional standing analysis with the real-party-in-interest analysis but clarified that, as to a Chapter 7 bankruptcy trustee and a debtor, the issue is decidedly one of the real party in interest and not standing. 934 F.3d 385 (4th Cir. 2019). In *Martineau*, the Chapter 7 debtor filed for Chapter 7 bankruptcy and did not disclose a tort claim. Following her discharge, the debtor filed suit over the tort claim, and the district court dismissed finding that the debtor lacked "standing" to pursue the claim, which belonged to the trustee because it had not been properly disclosed.

The Fourth Circuit reversed. In doing so, it took the time to clarify and distinguish between "standing" and "real party in interest." The court concluded that the district court had improperly dismissed Martineau's tort case and had confused Martineau's "standing" with her status as the "real party in interest":

> The problem with [the district court's improper analysis] is that it **conflates . . . standing** with the **distinct issue** of whether *Martineau* or her bankruptcy trustee was the "real party in interest," legally entitled to pursue these claims. There is no question in this case that *Martineau's* allegations satisfy the . . . requirements for standing: *Martineau's* complaint

alleges a distinct injury at the hands of Guest and the Wiers, traceable to their conduct, and redressable by a favorable decision on her tort claims. Indeed, neither the magistrate judge nor the district court applied that familiar three-part standard to *Martineau's* allegations and found them wanting.

Instead, the question in this case – on which the [lower] court did focus – is whether *Martineau* was legally entitled to pursue these tort claims on her own behalf, or whether the claims belonged solely to her [bankruptcy] estate. **That question implicates not Article III standing doctrine, but rather the "real-party-in-interest" requirement**. *See Wilson*, <u>717 F.3d at 342</u>–43 (treating question of whether debtor or bankruptcy trustee is entitled to maintain action for tax refund as one of real party in interest). Under Rule 17 of the Federal Rules of Civil Procedure, "an action must be prosecuted in the name of the real party in interest." <u>Fed. R. Civ. P. 17(a)</u>. And in the context of a Chapter 7 bankruptcy, it is the bankruptcy trustee and not the debtor who is the real party in interest with respect to property of the estate, with the right to bring any legal claims that belong to the estate. *Wilson*, <u>717 F.3d at 343</u>.

*Martineau*, <u>934 F.3d at 391</u> (emphasis added).

Further, the Fourth Circuit concluded that the defendant's "standing" argument had improperly led to the dismissal of Martineau's tort claims. The court explained that, in cases involving a single party, that party's case can be dismissed if the single plaintiff lacked standing. The Court noted that courts "have an obligation to assure [themselves] . . . [of] Article III standing **at the outset of the litigation**." *Id.* at 391 (emphasis added). Here, there is no question that Debtor had standing in 2011 to file his state court litigation against FFC. To be sure, FFC has never argued otherwise. This analysis is even more important here, because in Martineau, the debtor filed bankruptcy first and then later filed her tort suit. But even under those facts, standing was not the issue. To the contrary, Fed. R. Civ. Pro. 17 is controlling:

[T]here is no analogous rule for the real-party-in-interest requirement. To the contrary, Rule 17 makes clear that . . . courts are prevented from dismissing a complaint on real-party-in-interest grounds without first providing the real party in interest with the opportunity to "ratify, join, or be substituted into the action." <u>Fed. R. Civ. P. 17(a)(3)</u>. Because the district court miscategorized this question as one of constitutional standing, it improperly limited its focus to whether *Martineau* had the right to sue at the time of filing. And this was a critical error . . .

*Id.*

Significantly, the South Carolina Supreme Court has reached the same conclusion. In *Bardoon Props., NV v. Eidolon Corp.*, 326 S.C. 166, 169, 485 S.E.2d 371, 373 (1997), the Supreme Court held that real-party-in-interest arguments are not standing or jurisdictional arguments as advanced by FFC. In that case the Court noted that its own prior decisions had sometimes conflated these issues, just as the lower court in *Martineau* had conflated them. The Supreme Court clarified the confusion as follows:

> We have previously indicated that a party's lack of standing as a real party in interest deprives a court of subject matter jurisdiction. *Richland County Recreation District v. City of Columbia*, 290 S.C. 93, 348 S.E.2d 363 (1986); *Anders v. S.C. Parole and Comm. Corrections Board*, 279 S.C. 206, 305 S.E.2d 229 (1983). [Footnote three reads: The cases essentially equate the concepts of standing and real party in interest. . . . However, **there is a difference between the concepts of 'standing,' 'capacity to sue,' and 'real party in interest.'**] However, the wealth of authority is to the effect that the issue of a party's status as real party in interest does not involve subject matter jurisdiction [standing] . . . . Whether or not a party is the 'real party in interest' simply does not involve the court's power to hear a case of the general class (in this instance, a breach of contract claim).

*Id.* at 169, 169 n.3, 485 S.E.2d at 373, 373 n.3 (emphasis added).

FFC makes the same conflations here. In its Objection to Debtor's Motion to Reopen, FFC vacillates between a "standing" argument and a real-party-in-interest argument, which is likely what understandably led to the inclusion of the sentence at issue by the Court. (Obj. pp. 11–13.) Importantly, in its objection to Debtor's motion to reopen, FFC cites *Martineau* and Rule 17, (*id.* at p. 12), impliedly acknowledging *Martineau* and Rule 17 as controlling. Later in its objection, conflation and confusion occurs, and FFC reverts back the improper standing analysis. *Compare* (Objection p. 11) ("[Debtor] has lacked standing to pursue the State Court Litigation since 2013 because it was and is property of this bankruptcy estate.") *with* (Objection p. 12) ("Here, [Debtor's] claims belonged (and belong) to this bankruptcy estate, making the bankruptcy trustee, not [Debtor], the real party in interest in the State Court Litigation.") (citing *Martineau* and Rule 17, SCRCP). Notwithstanding FFC's conflation of standing and real party in interest, the Court should simply clarify the sentence at issue by issuing a revised order

4

modifying the sentence at issue as follows: "Delaney may have lost his status as the real party in interest to pursue his individual claim, but that issue has yet to be determined."

*Third*, the Court should revise the sentence at issue because FFC has never challenged in this Court Debtor's statutory right to bring class action claims against FFC for non-monetary relief, or his right to continue to represent the class even if it is ultimately determined that the Chapter 7 trustee is now the real party in interest with rights to pursue that claim. In a typical South-Carolina-state-court lawsuit involving one singular plaintiff, there are three ways a state-court litigant has standing to pursue a claim: (1) by statute, (2) through Article III of the U.S. Constitution, and (3) under the public importance exception. *ATC South, Inc. v. Charleston County*, 380 S.C. 191, 195, 669 S.E.2d 337, 339 (2008); *see ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) ("[T]he constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law[.]"). FFC has never argued—either here or in state court—that Debtor lacks "statutory standing" under the South Carolina Uniform Commercial Code, and the Code empowers Debtor with the ability to bring and maintain his lawsuit even if it is determined in the future that the bankruptcy trustee is the real party in interest related to Debtor's individual claim. *See* S.C. Code Ann. § 36-9-601; *e.g.*, S.C. Code Ann. § 36-9-625(e); *see also Singleton v. Stokes Motors, Inc.*, 358 S.C. 369, 375, 595 S.E.2d 461, 464 (2004) ("The UCC outlines the rights, remedies, and duties of parties to secured transactions."). Instead, FFC only contends that Debtor lacked Article III standing. Therefore, the Court should reconsider its statement that the Debtor "arguably lost standing" because the question is more nuanced in a class action where the Debtor is pursuing claim on behalf of an entire group of people. In any event, because FFC has never advanced the argument that Debtor lacks statutory standing to pursue claims on behalf of the class irrespective of whether the Chapter

7 trustee may be the real party in interest related to Debtor's individual claim, the Court should modify or amend its order to ensure it is not used for purposes for which it was not intended.

*Fourth*, the aforementioned sentence fails to consider the unique aspects of class action litigation and the possibility that a litigant whose individual claim may have expired, become moot, or has otherwise been impaired may still have the right to forge ahead on behalf of the class. The U.S. Supreme Court has determined that the expiration of a class representative's individual claim does not render the class representative incapable of continuing to serve as the class representative. *U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 404 (1980) ("[A]n action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim."); *Sonsa v. Iowa*, 419 U.S. 393, 401 (1975), (in class actions, "[t]he controversy may exist, however, between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot . . . although the controversy is no longer alive as to appellant [], it remains very much alive for the class of persons she has been certified to represent."); *see also* 32B Am. Jur. 2d Federal Courts § 1481 ("The mere fact that the class representative has standing at the inception of the class action has been held to permit the continuation of a class action and its litigation by the representative despite the subsequent termination of the individual controversy of the class representative.").

*Fifth*, also on page 9 of the order, the Court stated, "Had Debtor properly scheduled the State Court Litigation, the action would have been an asset for the trustee to administer." The Court should also revise this sentence because, ultimately, the trustee will decide whether to administer or abandon the asset. In other words, the claim only becomes an estate asset if the trustee decides to administer it in the future, if the motion to reopen the estate is granted.

For these reasons, the Court erred as a matter of law in stating, "Debtor arguably lost standing to continue pursuing the State Court Litigation after he filed for Chapter 7 relief in 2013," and "Had Debtor

6

properly scheduled the State Court Litigation, the action would have been an asset for the trustee to administer." The Court should modify the sentences to read, respectively, "**Delaney may have lost his status as the real party in interest to pursue his individual claim, but that issue has yet to be determined**," and "**Had Debtor properly scheduled the State Court Litigation, the trustee would have had the opportunity to administer the asset**."

 

  s./J. Ashley Twombley                      
J. ASHLEY TWOMBLEY
S.C. Bar #72916
Fed ID #9388
311 Carteret Street
Beaufort, SC  29902
 (843) 982-0100
twombley@twlawfirm.com

*Attorney for Debtor, Otha Marvin Delaney*

Beaufort, South Carolina

August 26, 2025

## CERTIFICATE OF SERVICE

The undersigned, J. Ashley Twombley, Esquire of TWENGE + TWOMBLEY LAW FIRM, Attorneys for Otha Marvin Delaney, Debtor, hereby avers that, pursuant to Order 2022-05-06-04 of the South Carolina Supreme Court, the attached is being served via electronic mail only to the below individual on August 26, 2025 due to technical difficulties of attempting to file through the District of South Carolina Document filing System:

Micheal M. Beal, Esquire
S.C. Bar #598
Kathryn A. Waites, Esquire
S.C. Bar#78743
1301 Gervais Street, Ste 1040
Columbia, SC  29211
(803) 728-0803
mbeal@bealllc.com
kwaites@bealllc.com
Attorneys for First Financial of Charleston, Inc.

Russell G. Hines, Esquire
S.C. Bar #72100
Clement Rivers, LLP
25 Calhoun Street, Ste 400
P.O. Box 993
Charleston, SC  29402
(843) 720-5488
rhines@ycrklaw.com
Attorneys for First Financial of Charleston, Inc.

Amanda K. Dudgeon, Esquire
S.C. Bar #72516
Chandler & Dudgeon LLC
P.O. Box 547
Charleston, SC 29402
mandi@chandlerdudgeon.com
(843) 577-5410
Attorneys for First Financial of Charleston, Inc.

Kevin Campbell, Esquire
Campbell Law Firm, P.A.
P.O. Box 684
Mount Pleasant, SC 29465
(843) 884-6874
kcampbell@campbell-law-firm.com
Trustee

    _s/J. Ashley Twombley_____
J. ASHLEY TWOMBLEY
S.C. Bar #72916 / Fed. ID #9388

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:

Otha Marvin Delaney,

Debtor(s).

C/A No. 13-00446

Chapter 7

**ORDER CONCERNING FIRST FINANCIAL OF CHARLESTON, INC.'S OBJECTION TO DEBTOR'S MOTION TO REOPEN**

**THIS MATTER** is before the Court on the Objection[1] by First Financial of Charleston, Inc. ("First Financial") to a Motion to Reopen[2] filed by Otha Marvin Delaney ("Debtor"). Debtor and First Financial have been engaged in a civil action for the past fourteen years (the "State Court Litigation")[3]. That litigation is now at the summary judgment stage,[4] where First Financial argues that Debtor should be barred from maintaining the State Court Litigation based on his failure of disclosure in this case. Debtor seeks to reopen this twelve-year-old bankruptcy case to list the cause of action against First Financial as an asset of this estate.

As a threshold matter, Debtor raised whether First Financial has a right to be heard on the Motion to Reopen and standing to object. Both parties filed statements of dispute on July 14, 2025.[5] In his statement, Debtor objected to any witness testimony or evidentiary hearing until this issue was determined. The Court held a hearing on standing on July 16, 2025. The parties agreed that an

---

[1] ECF No. 22.
[2] ECF No. 19.
[3] *Otha Delaney v. First Financial of Charleston Inc.*, Case No. 2011-CP-10-07166 (S.C. Ct. Com. Pl., Charleston Cnty., filed Oct. 4, 2011)
[4] ECF No. 22, p. 8, ¶ 47.
[5] ECF Nos. 28 and 29.

evidentiary hearing on this issue was unnecessary as the matter was purely a question of law.[6] At the conclusion of the hearing, the Court orally ruled that First Financial had standing to object to the Motion to Reopen and continued the hearing on the merits of Debtor's Motion to Reopen until September 9, 2025.

## FACTS AND PROCEDURAL BACKGROUND

On October 4, 2011, Debtor filed a class action in the Charleston County Court of Common Pleas against First Financial, alleging that First Financial violated the South Carolina Commercial Code related to its collection efforts against Debtor and other putative class members. Debtor is the lead plaintiff of the class. The State Court Litigation is not yet resolved. The nearly fourteen-year procedural history of the State Court Litigation is complex, but the facts relevant to this matter are simple.

The parties agree that Debtor entered into a retail installment sales contract to purchase a vehicle in October of 2007. First Financial was the secured party to that contract. Debtor defaulted on the loan contract. In the spring of 2008, First Financial repossessed the vehicle. Debtor's state court complaint alleges that Debtor, and others similarly situated, were not provided proper notice of disposition under the UCC when their collateral was sold.

On January 24, 2013, Debtor filed this Chapter 7 bankruptcy case. First Financial was not scheduled as a creditor and the State Court Litigation was listed

---

[6] First Financial argues that it also purchased another creditor's claim, to solidify its own standing to object, and attempted to enter the assignment agreement at the hearing. Debtor objected to the evidence of assignment being introduced. The objection was sustained for lack of foundation. *See* Transcript of Hearing Held on July 16, 2025, at 59: 25–61:3, *In re Delaney*, C/A No. 13-00446-JD (Bankr. D.S.C. January 24, 2013), ECF No. 41.

2

as "dismissed" in the Statement of Financial Affairs.[7] Debtor did not schedule the

State Court Litigation as an asset in Schedule B nor did he exempt any recovery

from the action in Schedule C. First Financial asserts that the State Court

Litigation was, in fact, not dismissed at the time of the petition or at the time the

chapter 7 trustee filed his report of no assets.[8]

Debtor now asks the Court to reopen the 2013 bankruptcy case, for the

purpose of amending schedules to "list and describe the [l]awsuit in a more fulsome

manner."[9] First Financial opposes the relief because its recent motion for summary

judgment in the State Court Litigation is pending before the trial court and

reopening this case may impact that proceeding.

## ANALYSIS AND CONCLUSIONS OF LAW

Chapter 7 debtors must file schedules that list and describe all of their

assets, including legal claims against others. 11 U.S.C. § 521(a)(1)(B)(i). When a

chapter 7 case is closed, assets that the debtor scheduled but the trustee did not

administer are automatically "abandoned," meaning they revert to the debtor's

ownership. 11 U.S.C. § 554(c). But any assets that the debtor failed to schedule are

not abandoned and instead remain property of the estate. 11 U.S.C. § 554(d). Debtor

now seeks to correct a misstep in his original filing to disclose the State Court

Litigation as an asset that may either be administered by a trustee or abandoned to

---

[7] *See* ECF No. 1.

[8] From the state court's records, it appears the State Court Litigation was dismissed prior to Debtor's discharge by the trial judge. On appeal, the trial court's order granting dismissal was reversed and the State Court Litigation has continued. *See Delaney v. First Fin. of Charleston, Inc.*, 418 S.C. 209, 211, 791 S.E.2d 546, 547 (Ct. App. 2016), *rev'd*, 426 S.C. 607, 829 S.E.2d 249 (2019).

[9] ECF No. 19, p. 2, ¶ 9.

him.

There are two threshold issues the Court must determine prior to hearing the
merits of Debtor's Motion to Reopen. First, whether First Financial has a statutory
right to be heard on its objection. Second, if it does have a right to be heard,
whether that right is constrained by traditional Article III standing requirements.

Debtor contends[10] First Financial lacks both the right to be heard under the
Bankruptcy Code and standing under Article III of the United States Constitution
to object to his Motion to Reopen because First Financial's only demonstrated
interest in this matter is the potential effect that reopening the case might have on
the State Court Litigation.[11] This Court has previously found that a defendant to a
state court action lacks standing to oppose reopening. *In re Boyd*, 618 B.R. 133, 160
(Bankr. D.S.C. 2020). However, the facts of *Boyd* were very different from the facts
of this case. In *Boyd*, a debtor sought to reopen a chapter 13 case to disclose a post-
petition cause of action and the party opposing reopening had no stake in the
outcome of the bankruptcy case. In this case, the State Court Litigation was
initiated pre-petition and remains pending against First Financial in its capacity as
a former secured creditor of property pledged by Debtor. Debtor nevertheless avers
First Financial is not presently a creditor. Debtor alleges that First Financial has
not provided any evidence of its secured, unfulfilled lien against Debtor,[12] of its
acquisition of another creditor's claim,[13] or of any pecuniary interest that would be

---

[10] *See* ECF No. 26 ("Debtor's Response to First Financial's Objection"), pp. 5–6.
[11] *See* Debtor's Response to First Financial's Objection, p. 4.
[12] *See* Debtor's Response to First Financial's Objection, pp. 3–4.
[13] *See* Debtor's Response to First Financial's Objection, pp. 6–7.

directly affected by the reopening of this case. Debtor also contends that the statute of limitations has barred First Financial from seeking any additional recovery from Debtor under the 2007 contract.

First Financial disagrees, contending it has both a statutory right to be heard as a "party in interest" and, to the extent it is required, Article III standing to object. On both of these issues, the Court agrees with First Financial.

## I.    Right to be Heard as a Party in Interest

"A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C § 350(b). Fed. R. Bankr. P. 5010 allows a case to be reopened "on motion of the debtor or **a party in interest** pursuant to § 350(b) ..." Fed. R. Bankr. P. 5010 (emphasis added). However, the right to oppose a motion to reopen is not specifically addressed in the Bankruptcy Code or Rules. Courts considering the issue focus on whether the objecting party is a "party in interest." *See In re Malin*, 652 B.R. 828, 831-32 (Bankr. N.D. Ga. 2023). This Court agrees. If a party in interest has a right to raise an issue, it follows that the party in interest has the right to be heard when the issue is raised by another, and their rights would be impacted by the outcome.

"Party in interest" is not defined in the Bankruptcy Code, but the Fourth Circuit has indicated that a "party in interest" for bankruptcy purposes includes "'all persons whose pecuniary interests are directly affected by the bankruptcy proceedings.'" *In re Boyd*, 618 B.R. at 146 (quoting *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 756 (4th Cir. 1993)) (internal citations

omitted).

For additional guidance in determining who qualifies as a "party in interest," many courts look to the definition set forth in 11 U.S.C. § 1109(b). Section 1109(b) states that a "party in interest" includes, but is not limited to, "the debtor, the trustee, a creditor's committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee..."

The Supreme Court has recently discussed the meaning of the term, holding "party in interest" is "capacious" and covers any party whose "financial exposure may be directly and adversely affected by a plan ...." *Truck Ins. Exch., Inc. v. Kaiser Gypsum Co.*, 602 U.S. 268, 284 (2024). "This understanding aligns with [the Supreme Court's] observation that Congress uses the phrase 'party in interest' in bankruptcy provisions when it intends the provision to apply 'broadly.'" *Id.* at 278 (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, (2000)); *see also* 11 U.S.C. § 502(a). While § 1109(b) is limited[14] to cases under chapter 11, this Court and others have applied the "party in interest" concept to analyze the term as it pertains to a party's right to be heard in Chapter 7 cases. *See In re Taylor*, No. CA 11-00156-DD, 2011 WL 3206994, at *3 (Bankr. D.S.C. July 27, 2011) (finding that a creditor in a chapter 7 case is a party in interest under § 1109 and therefore may object to the Trustee's motion to sell property of the estate free and clear of liens).

---

[14] The Supreme Court has cautioned against using the term beyond the scheme to which it is related but notes that the term has been construed in other contexts as including those directly and adversely affected by the outcome of a proceeding. *Truck Ins. Exch.*, 602 U.S. at 279, n.4 (citing *Western Pacific California R. Co. v. Southern Pacific Co.*, 284 U.S. 47, 51–52 (1931)).

As discussed below, First Financial is a creditor with a pecuniary interest in the estate that may be directly affected if this case is reopened. Therefore, under the big tent interpretation of *Truck Ins. Exch.*, First Financial is a party in interest with a right to be heard on Debtor's requested relief.

### a. First Financial's Status as a Creditor

"The terms 'debt' and 'claim' are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." S.Rep. No. 989, 95th Cong., 2d Sess. 23, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5809; H.R.Rep. No. 595, 95th Cong., 2d Sess. 310, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6267. "By this broadest possible definition ... the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." S.Rep. No. 595, 95th Cong., 2d Sess. 22, reprinted in 1978 U.S.C.C.A.N. 5787, 5808; H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 309, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6266.

This statutory intent is reflected in the Code's definition of "claim" as a "right to payment." 11 U.S.C. § 101(5). Even a claim that is disputed is nevertheless a claim as the Code defines the term. *In re Knight*, 55 F.3d 231, 234 (7th Cir. 1995). A "creditor," in turn, is defined as an entity holding a "claim against the debtor." 11 U.S.C. § 101(10). Again, regardless of whether the claim is disputed, the claim holder is still treated as a creditor in a bankruptcy case. *B-Real, LLC v. Chaussee (In re Chaussee)*, 399 B.R. 225, 233 (B.A.P. 9th Cir. 2008).

State law usually determines whether a party has a "right to payment." *Midland Funding, LLC v. Johnson*, 581 U.S. 224, 228 (2017). Actions to recover

7

debts in South Carolina must generally[15] be brought within three years of the
default on the debt. S.C. Code Ann. § 15–3–530 (2015). This bar only effects the
remedy available to a collecting party rather than the underlying right: it does not
erase the debt. *In re Vaughn*, 536 B.R. 670, 677 (Bankr. D.S.C. 2015) (internal
citations omitted); *Amaker v. New*, 33 S.C. 28, 11 S.E. 386, 387 (S.C. 1890) (holding
under South Carolina law that the statute of limitations "does not operate as the
payment of the debt"). An unenforceable obligation is nonetheless a "right to
payment," and therefore a "claim," under the Bankruptcy Code. *Midland Funding,*
581 U.S. 224 at 229.

First Financial asserted that, after the repossession and liquidation of
Debtor's vehicle, Debtor owed a balance of $4,187.57. Debtor asserts First Financial
was not a creditor when this bankruptcy case was filed and, therefore, not a party
in interest, because any claim First Financial may have had was stale. However,
Debtor's Response to First Financial's Objection concedes that Debtor and First
Financial entered into a loan agreement in 2007, and Debtor breached the loan
agreement in the same year.[16] Further, at the hearing, Debtor's counsel agreed that
it was "beyond dispute" that after Debtor's default on the loan agreement, First
Financial sent Debtor a demand letter, declared Debtor in default, repossessed
Debtor's vehicle, sold the vehicle, and notified Debtor via letter that he still owed
First Financial money after the proceeds from the sale of the vehicle were applied to

---

[15] Actions for breach of a bond, a contract secured by a mortgage of real property, and certain sealed
instruments must be brought within 20 years under S.C. Code Ann. § 15–3–520 (2015). As First
Financial's loan was secured by Debtor's vehicle, and not real property, the three-year limitation
period prescribed in § 15–3–530 applies.
[16] *See* ECF No. 26, p. 3.

his deficiency.[17] By Debtor's own description, First Financial had a claim for a deficiency against Debtor. Though that claim may be stale, First Financial is still a "creditor" as that term is defined in the Code. *See Amaker v. New*, 33 S.C. 28, 11 S.E. at 387; *Midland Funding*, 581 U.S. 224 at 229. Whether First Financial's claim would ultimately be allowed is an issue for another day, but the Supreme Court's holding in *Midland Funding* is clear: the Court should not speculate as to what may happen during the claim allowance process when making this threshold determination as to whether First Financial is a creditor. Since First Financial is a creditor, it has statutory right to be heard as a party in interest to oppose Debtor's Motion to Reopen.

### b.  First Financial's Status a Party with a Pecuniary Interest

Moreover, the State Court Litigation is premised on the existence of a pre-petition creditor/debtor relationship between First Financial and Debtor and should have been disclosed as an asset. 11 U.S.C. § 521(a)(1)(B)(i). Rather than schedule the State Court Litigation as an asset, Debtor only disclosed the action in the Statement of Financial Affairs as a dispute that ended prior to the commencement of this bankruptcy case. Had Debtor properly scheduled the State Court Litigation, the action would have been an asset for the trustee to administer.

Debtor arguably lost standing to continue pursuing the State Court Litigation after he filed for Chapter 7 relief in 2013. First Financial has incurred costs defending the suit since this bankruptcy case was filed. Debtor's requested

---

[17] *See* ECF No. 41, 23:24–24:3.

relief may further prolong the litigation, require First Financial to dedicate additional resources to its defense, and blunt First Financial's ability to use a judicial estoppel defense in the State Court Litigation. *See Smidt v. Nationstar Mortgage LLC (In re Smidt)*, No. BAP CC-24-1071-FGL, 2025 WL 863113, at *7 (B.A.P. 9th Cir. Mar. 19, 2025) (holding a defendant in state court litigation brought by the debtor had standing as a party in interest to object to the debtor's motion to reopen the case because if the case had been reopened, the defendant would have had to incur additional attorneys' fees defending against the debtor's state court claims and might have lost a judicial estoppel defense). The costs First Financial has and will continue to incur in defending the State Court Litigation are a pecuniary interest directly affected by this bankruptcy imbuing First Financial with statutory status as a party in interest. *In re Boyd*, 618 B.R. at 146.

## II.    Article III Standing

Questions concerning the right to be heard as a party in interest in a bankruptcy case are often considered alongside questions of constitutional standing. Because this Court traffics in assets, obligations, and the adjustment of the debtor/creditor relationship, the overlap between the two is nearly seamless. However, the Circuits are split over whether the "right to be heard" as a party in interest incorporates Article III's requirements for standing or imposes more stringent limitations.[18]

---

[18] *Compare In re Global Indus. Techs., Inc.*, 645 F.3d 201, 211 (3d Cir. 2011) (bankruptcy standing is coextensive with Article III standing) *with Hughes v. Tower Park Props., LLC (In re Tower Park Props., LLC)*, 803 F.3d 450, 456–57, n.6 (9th Cir. 2015) (bankruptcy standing is more restrictive than

Debtor asserts that First Financial must also have Article III standing for the

Court to consider its objection. Debtor cites this Court's opinion in *Boyd* in support

of this assertion. However, the facts of *Boyd* are different and, since that case was

decided, the Fourth Circuit and the Supreme Court have cast doubt on the notion

that a party objecting to relief in this Court must demonstrate Article III standing

to be heard.

As courts are split on whether the party in interest standard equates to

Article III standing, the courts are also split on whether Article III's case-or-

controversy requirement even applies to this Court. The Third, Seventh, Eighth,

and Tenth Circuits have reasoned that Article III standing requirements apply in

proceedings before bankruptcy courts because Article III limitations apply to federal

courts and bankruptcy courts are federal courts, without analyzing the issue

further.[19] In contrast, the Fifth Circuit has concluded that Article III standing

requirements do not apply to bankruptcy courts because bankruptcy courts are not

---

Article III standing); *see also Carl F. Schier PLC v. Nathan (In re Cap. Contracting Co.*), 924 F.3d
890, 895 (6th Cir. 2019). They are also split over whether it applies outside of Chapter 11
bankruptcies. *See Id*. The Fourth Circuit has declined to explicitly confront either of these questions.
*See Kiviti v. Bhatt*, 80 F.4th 520, 534, n.11 (4th Cir. 2023).

[19] *See In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) ("To object to the confirmation
of a reorganization plan in bankruptcy court, a party must, in the first instance, meet the
requirements for standing that litigants in all federal cases face under Article III of the
Constitution."); *Rosenfeld v. Rosenfeld (In re Rosenfeld)*, 698 F. App'x 300, 303 (6th Cir. 2017)
(applying the case or controversy requirement to adversary proceedings in bankruptcy courts and
asserting federal courts "may decide only 'cases' and 'controversies.' "); *GAF Holdings, LLC v.
Rinaldi (In re Farmland Indus., Inc.)*, 639 F.3d 402, 405 (8th Cir. 2011) (Article III standing before a
bankruptcy court is required because "federal courts must ensure that Article III standing exists.");
*Pettine v. Direct Biologics, LLC (In re Pettine)*, 655 B.R. 196, 207 (10th Cir. BAP (Colo.) 2023)
(holding Article III standing limits the jurisdiction of bankruptcy courts "based on the derivative
nature of bankruptcy court jurisdiction."). The courts which hold that Article III case or controversy
limitations apply to bankruptcy court proceedings generally arrive at that conclusion due to the fact
that bankruptcy courts derive their jurisdiction through the same statutory jurisdictional provision
as the district courts, 28 U.S.C. § 1334, with all bankruptcy cases, matters, and proceedings being
referred to the bankruptcy courts by the district courts through general orders of reference.

authorized by Article III.[20]

The Fourth Circuit has recently issued conflicting decisions on whether Article III jurisdictional constraints apply to bankruptcy courts: *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc. (In re Kaiser Gypsum Co., Inc.)*, 60 F.4th 73 (4th Cir.), *cert. granted sub nom.*, 144 S. Ct. 325 (U.S. Oct. 13, 2023) (No. 22-1079), *and rev'd and remanded sub nom., Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268 (2024), and *Kiviti v. Bhatt*, 80 F.4th 520 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2519 (May 13, 2024) (No. 23-729).

In *Kaiser Gypsum*, the Fourth Circuit held an insurer could not object to the debtor's chapter 11 plan because it failed to establish an injury in fact and therefore did not demonstrate its standing to object under Article III, which is "still required in every case". *Id.*, 60 F.4th 73, 88; n.10. The Fourth Circuit further held that the insurer lacked standing as a party in interest under 11 U.S.C. § 1109 because the plan, under which the insurer's general unsecured claim was fully satisfied, did not affect the insurer's legally protected interest. *Id.*

Following appeal, *Kaiser Gypsum* was reversed and remanded. *See Truck Ins. Exch.*, 602 U.S. 268 (2024). The Supreme Court held that the insurer was a party in

---

[20] *NexPoint Advisors, L.P., v. Pachulski Stang Ziehl & Jones, L.L.P. (In re Highland Cap. Mgmt., L.P).*, 74 F.4th 361, 366 (5th Cir. 2023) ("Bankruptcy courts are not authorized by Article III of the Constitution, and as such are not presumptively bound by traditional rules of judicial standing."); *Furlough v. Cage (In re Technicool Sys., Inc.)*, 896 F.3d 382, 385 (5th Cir. 2018) ("Bankruptcy courts are not Article III creatures bound by traditional standing requirements."). The Fifth Circuit's conclusions in *Highland Capital Management* and *Technicool* that bankruptcy courts are not subject to Article III jurisdictional constraints are arguably dicta because in both cases the court concluded that the "person aggrieved" test, which applies to standing to appeal a bankruptcy court decision, is more stringent than the Article III standing requirement and the appellant in each case did not satisfy that requirement. 74 F.4th at 366–67, 896 F.2d at 385–86.

interest with standing to object to the plan due to its financial responsibility for claims against the debtor under 11 U.S.C. § 1109 and did not address the Fourth Circuit's holding that standing under Article III is required for parties raising objections in bankruptcy cases.[21] *Id.*, 602 U.S. at 280–281.

In *Kiviti v. Bhatt*, the Fourth Circuit held once a case is validly referred to a bankruptcy court under 28 U.S.C. § 157, the constraints of Article III—such as mootness, or the case-or-controversy requirement—no longer apply as a matter of constitutional law. *Id.*, 80 F.4th at 536. The Fourth Circuit reasoned that a district court can only refer a case that it has jurisdiction over to a bankruptcy court, and as every action by a district court is constrained by Article III, any case that is referred to the bankruptcy court must satisfy Article III. *Id.*, 80 F.4th at 533 (citing *Ex parte McCardle*, 74 U.S. 506, 514 (1868); *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012); and *Croniser v. Butler (In re Croniser)*, No. 22-1227, 2022 WL 7935991, at *1 (4th Cir. Oct. 14, 2022) (unpublished)).

However, "[o]nce a case is validly referred to the bankruptcy court, the Constitution does not require it be an Article III case or controversy for the bankruptcy court to act," as the Article III case or controversy requirement comes

---

[21] The Bankruptcy Court for the District of Delaware held that recent Supreme Court authority, including *Truck Ins. Exch.*, indicate that a party objecting to relief in bankruptcy court does not need to demonstrate Article III standing to be heard on the basis that the objecting party is not invoking the court's jurisdiction. *In re AIO US, Inc.*, No. 24-11836 (CTG), 2025 WL 1617477, at *7 (Bankr. D. Del. June 6, 2025). In the context of *Truck Ins. Exch.*, the District of Delaware specifically noted "if the Supreme Court believed that the question of insurer standing to object to confirmation implicated Article III of the Constitution, [one would expect] the Court to have considered and addressed that question before turning to the statutory issue." *Id.*, 2025 WL 1617477, at *4.

from the Constitution's limits on judicial power, and Bankruptcy Courts do not

wield judicial power. *Id.* (citing *In re Technicool Sys., Inc.*, 896 F.3d 382, 385 (5th

Cir. 2018)) ("Bankruptcy courts are not Article III creatures bound by traditional

standing requirements."). Further, the Fourth Circuit reasoned that bankruptcy

courts, "as statutory creatures, have whatever power Congress lawfully gives them."

*Id.* 28 U.S.C. § 157(b)(1) grants bankruptcy courts power to "hear and determine all

[bankruptcy] cases … and all core proceedings … referred" to them by a district

court—not just those proceedings that could be fully adjudicated in a district court.

*Id.*, 80 F.4th at 533 (4th Cir. 2023). As 28 U.S.C. § 157(b)(1) does not include

language requiring proceedings before a bankruptcy court meet Article III's "case or

controversy" requirement, the Fourth Circuit declined to impose such a

requirement. *Id.*, 80 F.4th at 534 (citing Antonin Scalia & Bryan A. Garner,

Reading Law: The Interpretation of Legal Texts 96 (2012)) ("[W]hat a text does not

provide is unprovided.").

The Fourth Circuit does not render an explicit holding as to whether Article

III standing is required for parties raising objections in bankruptcy courts in *Kiviti*.

The Court need not reconcile the divergent interpretations of 28 U.S.C. § 157[22] in

this case, because, if Article III standing is required, First Financial has it.[23]

"To establish constitutional standing, the party must first 'have suffered an

injury in fact—an invasion of a legally protected interest which is (a) concrete and

---

[22] *See, supra*, n. 19, n. 20. *See also White-Lett v. NewRez, Inc.*, 661 B.R. 63, 84 (N.D. Ga. 2024).
[23] *See Sanders v. First Recovery, LLC*, No. 5:23-CV-00553-FL, 2024 WL 4164163, at *3, n.5 (E.D.N.C. Aug. 6, 2024).

particularized, and (b) actual or imminent, not conjectural or hypothetical[.]'" *In re Boyd*, 618 B.R. 133, 146 (Bankr. D.S.C. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted). Second, the party must establish that the injury in fact is traceable to the conduct at issue. *Lujan*, 504 U.S. at 560. "Finally the party must show that it is 'likely', as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)).

Debtor's Response to First Financial's Objection[24] accurately notes this Court has found the defendant in a debtor's post-petition tort suit lacked constitutional standing to file a motion to reconsider an order reopening the debtor's bankruptcy case based on the potential loss of a defense in the tort suit, which the Court deemed too speculative to constitute an injury in fact. *See In re Boyd*, 618 B.R. at 146. However, unlike the defendant in *Boyd*, First Financial's injury in fact does not depend on the outcome of an unscheduled claim. First Financial has suffered an injury in fact: it has incurred costs over the last 12 years defending the State Court Litigation, which was initiated pre-petition and that Debtor may have had no right to pursue once this case was filed. Those costs are not speculative. *See In re Smidt*, 2025 WL 863113, at *6 (holding that a state court defendant's litigation costs, incurred over eight years defending a lawsuit that the debtor failed to properly schedule in his Chapter 7 case, were an injury in fact and the defendants therefore

---

[24] *See* ECF No. 27, p. 4.

15

had Article III standing to object to the debtor's third motion to reopen the case).

Debtor's requested relief could further prolong the State Court Litigation and

require First Financial to dedicate additional resources to its defense. At this stage,

First Financial has made sufficient factual allegations of an injury in fact to support

standing under Article III to object to Debtor's Motion to Reopen the case. That

injury is traceable to conduct of Debtor and may be redressed by hearing the merits

of both Debtor's Motion to Reopen and First Financial's opposition to it.

A hearing on the merits of Debtor's Motion to Reopen and the objection by

First Financial shall be heard on September 9, 2025. In addition to the

requirements of the Scheduling Order entered July 22, 2025, the parties are

directed to file a **joint** statement of dispute on or before September 2, 2025, using

the appropriate local form.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**08/12/2025**

US Bankruptcy Judge
District of South Carolina

Entered: 08/12/2025

Filed By The Court

U.S. BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

8/26/2025 11:08 PM

## CERTIFICATION OF INABILITY TO FILE ELECTRONICALLY

The undersigned, J. Ashley Twombley, hereby avers that he is the attorney for Debtor and that on the 26th day of August 2025 encountered an after-hours technical failure related to the inability to establish a duo-factor authentication to access and file through the Bankruptcy Court's ECF portal. Pursuant to the local bankruptcy court rules, he is submitting the filing through the Court's EDSS portal. The Motion is time sensitive because it seeks to alter or amend an August 12, 2025 order. Bankruptcy Rule 9023 requires such a motion to be submitted within 14 days of the judgment's entry. He hereby requests to receive the documents in the manner submitted

BY:     s/J. Ashley Twombley
        TWENGE + TWOMBLEY LAW FIRM
        Attorney for Debtor