### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>OTHA MARVIN DELANY,<br>　　　　　　　　　　Debtor. | Chapter 7<br><br>C/A No.: 13-00446-jd |

### MOTION TO CONTINUE, STAY, AND/OR WITHDRAWAL

Debtor, by and through his undersigned counsel, hereby moves the Court to a) continue the September 9, 2025 hearing because of unexpected discovery issues, b) temporarily stay these proceedings pending resolution of other class members' intervention motion soon to be resolved by the state court, or c) grant Debtor permission to withdraw his Motion to Reopen without prejudice on terms that he will protect and preserve any individual financial recovery he, or his potential bankruptcy estate, may be entitled to in the future. Debtor makes this motion pursuant to the Court's equitable powers under 11 U.S.C. 105 and the Court's inherent authority. Kevin Campbell has no objection to this matter being continued.[1] (**Exhibit A**.)

### Argument

Debtor has reflected on comments made by the Court during the July 16, 2025 hearing and further has considered those comments in light of events that have transpired following the July 16, 2025 hearing, some of which this Court may not be aware. When considering the Court's July 16, 2025 comments and these recent events, Debtor believes that there is a more efficient path forward that will preserve the resources of the parties and the Court, and further, that issues related to Debtor's individual claim can be

---

[1] Attorney Kevin Campbell was the trustee of Debtor's 2013 bankruptcy estate and would, in all likelihood, be reappointed if Debtor's 2013 estate is reopened. Therefore, Debtor has attempted to consider his interest.

1

resolved in the future when and if needed. In addition, the events that have transpired recently reveal that there is no good reason to forge ahead in a hurried fashion, burdening this busy Court (and its staff) with a contested trial that could take significant time and resources. Finally, First Financial of Charleston's ("FFC") effort leverage a decision from this Court as to Debtor's individual claim into something that it may attempt to improperly use as a panacea to support total immunity from liability for an entire class of other individuals is not only impossible under the law, it should not dictate how this Court proceeds related to Debtor's individual claim. Debtor's Motion is due to be granted.

### A. Intervention

During the July 16, 2025 hearing, this Court astutely noted that the potential intervention of other class members in the state court action would open the door to this Court deferring a decision on re-opening Debtor's 2013 bankruptcy estate, and further, that reopening the estate could be handled in the future if and when needed:

> **What harm would there be in leaving it closed and allowing the state court process to play out to determine if there is a recovery. And if there is a recovery, like the mesothelioma case that I mentioned at the beginning of today's hearing, for the case then to be reopened for the asset to be administered or exempted or distributed to creditors or to him. . . .**
>
> **I mean, even if I tell you no now on reopening doesn't mean it couldn't be reopened after the case if resolved. . . .**
>
> **But you substitute him out as class representative, you still have a case.**

(Hr'g Tr. p. 37–38.)

Since the Court made this observation, three class members ("Intervenors") have filed motions to intervene in the state court action. (**Exhibits B & C**.) The Intervenors seek to intervene for the expressed purpose of curing any issue that may be caused by Debtor's 2013 bankruptcy. The trial court has already set a hearing on the Intervenors' motion, which will take place in September. The Intervenors have the

2

legal right to intervene, particularly when circumstances unfold after class certification that call into question whether Debtor can serve as the sole named class representative. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013) (quoting 5 Alba Conte & Herbert Newberg, Newberg on Class Actions § 16:7, at 154 (4th ed. 2002)) ("Members of a class have **a right to intervene** if their interests are not adequately represented by existing parties." (emphasis added)).

Even Counsel for FFC acknowledged to this Court that intervention by other class members would call into question the advisability of this Court addressing reopening now, particularly when other class members can intervene and advance the state court litigation in a manner that would determine whether Debtor (or his estate) might be entitled to a recovery:

> **THE COURT: But the class itself would still go forward.**
>
> **MR. BEAL: Beg your pardon?**
>
> **THE COURT: The class itself would still go forward in state court.**
>
> **MR. BEAL: I think they'd go find another class representative in that case. They've acted like they said that's not going to be a problem. So again, I don't know why we're arguing so vociferously over $2,000 here.**

(*Id.* at 58.)

Moreover, the state court has rejected FFC's arguments that the potential re-opening of Debtor's 2013 bankruptcy estate would impede Debtor's right to continue to serve as class representative. While FFC argued to the state court that Debtor's 2013 bankruptcy barred the Debtor from any ability to continue to serve as a class representative, Debtor argued that he can continue serving even if it is ultimately determined in the future that Debtor lost the right to receive a financial recovery related to his individual claim. *See U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 404 (1980) ("[A]n action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim."); *Sonsa v. Iowa*, 419 U.S. 393, 401 (1975), (in class actions, "[t]he controversy may exist, however, between a named

defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot . . . although the controversy is no longer alive as to appellant [], it remains very much alive for the class of persons she has been certified to represent."); 32B Am. Jur. 2d Federal Courts § 1481 ("The mere fact that the class representative has standing at the inception of the class action has been held to permit the continuation of a class action and its litigation by the representative despite the subsequent termination of the individual controversy of the class representative."). The state court has **rejected** FFC's arguments and agreed with Debtor's. (**Exhibit D**.)

FFC also argued to the state court that Debtor lost "standing" in 2013, and according to FFC, Debtor had no right to do anything related to the state court action since that time. Debtor argued that FFC's "standing" argument was really a real-party-in-interest argument. Debtor's argument in state court was based on the same grounds that support Debtor's Motion to Reconsider, and those arguments are incorporated herein by reference. (ECF 48.) In sum, because the issue of whether a debtor or his bankruptcy estate may continue to pursue a claim a debtor's claim raises "real party in interest" questions, not standing, resolution of that issue would only lead to having the "real party in interest" ratify or be substituted in the future if needed. *See Martinuea v. Weir*, 934 F.3d 385, 391 (4th Cir. 2019) ("Instead, the question in this case – on which the [lower] court did focus – is whether *Martineau* was legally entitled to pursue these tort claims on her own behalf, or whether the claims belonged solely to her estate. **That question implicates not Article III standing doctrine, but rather the "real-party-in interest" requirement**." (emphasis added)); *Bardoon Props., NV v. Eidolon Corp.*, 326 S.C. 166, 169 n.3, 485 S.E.2d 371, 373 n.3 (1997) ("**[T]here is a difference between the concepts of 'standing,' 'capacity to sue,' and 'real party in interest.**" (emphasis added)); Rules 17 and 25, SCRCP. The state court similarly rejected FFC's standing argument. (**Exhibit D**.)

### B. Discovery Issues and a Rush to Judgment

While Debtor is of the opinion that his Motion to Reopen could and should be resolved in a simple and straightforward way, in light of FFC's Objection and allegations that Debtor orchestrated an intentional scheme to defraud the Court, Debtor has been forced to defend against these disingenuous arguments. Moreover, while Debtor and his counsel have worked hard to meet the Court's preferred timeline for a quick discovery period and quick resolution of the issue before the Court, discovery is taking longer than anticipated and several important issues have arisen that make holding a contested case hearing on September 9, 2025, decidedly more difficult:

- Debtor's 2013 bankruptcy counsel (Michael Drose) previously indicated he had no files from 2013 because he is now retired, his office is closed, and because his representation of Debtor related to the 2013 bankruptcy concluded more than seven years ago, which is beyond the file retention policies for South Carolina attorneys. However, during his recent deposition, Mr. Drose indicated it is possible he may in fact have Debtor's file, and he committed to looking for the same. During the August 26, 2025 status conference, the Court noted that Mr. Drose's file was important and asked counsel to assist Mr. Drose in determining whether a file might exist. Unfortunately, Mr. Drose is suffering from significant and life-altering medical issues, and his responsiveness to and ability to meet the demands of an aggressive scheduling order are limited. While Mr. Drose committed to conducting the search needed, as of the filing of this Motion, there has been no resolution on this issue. More importantly, if the file is located, time will be needed to review it, and further, it is possible that his *trial* deposition will need to be reconvened so that he can be asked questions about his file. Debtor and FFC will both be entitled to that. Significantly, at the time his trial testimony was taken, Debtor's counsel had been told Mr. Drose no longer had his file, but perhaps due to his medical condition or for some other innocent reason, that may not be the case. Time will tell. Because Mr. Drose is a central witness, and because his file may include

5

critical information bearing on the decision that needs to be made by this Court, adequate time should be allowed to resolve this important issue correctly and with confidence.

- Debtor has now determined that he will not call witness Phil Fairbanks. While Mr. Fairbanks is no longer actively involved in the state court litigation, Mr. Fairbanks is still listed as counsel of record and previously served as counsel for Debtor in the state court litigation. Debtor decided not to call Mr. Fairbanks for many reasons, including attorney-client privilege issues. Nonetheless, despite indicating at the beginning of the status conference that if Debtor withdrew Mr. Fairbanks as a witness, FFC would not need to depose Mr. Fairbanks, by the end of the same conference, FFC announced that it was necessary for FFC to depose Mr. Fairbanks to support its case. More time will be needed to depose Mr. Fairbanks. More importantly, Mr. Fairbanks's deposition will no doubt raise complicated and complex attorney client privilege issues, which may need to be resolved by the Court after Mr. Fairbanks is deposed. In addition, it is unclear whether Mr. Fairbanks is willing to voluntarily sit for a deposition when Debtor has decided not to call Mr. Fairbanks as a witness. This means FFC may need to spend time arranging to depose Mr. Fairbanks. In any event, resolution of these issues will take time.

- As of the filing of this Motion, neither Delaney nor FFC has been deposed. Certainly, Debtor's deposition should be delayed until the availability of Mr. Drose's file is resolved with certainty. As to FFC, it has objected to much of Plaintiff's interrogatories and requests for production. In fact, FFC did not produce a single document in response to any of Debtor's requests for production. While Debtor has not made a final decision on filing a motion to compel, a discovery conference will be needed, and, if those issues cannot be resolved, the Court may unfortunately need to be burdened with another discovery dispute. Finally, finding a suitable time for Debtor's deposition

6

has been difficult because Debtor is in the process of moving from Virgina back to South Carolina and scheduled his move for this week.

- During the August 26, 2025 status conference, Debtor learned for the first time that the date it had noticed FFC's representative's deposition would not work for FFC. While FFC has now provided an alternative date yesterday evening, it is unclear whether that date will work for Debtor and his state court and bankruptcy counselors.

While these are only some examples, Debtor believes that, given the current state of discovery, the fact that a holiday weekend is approaching, and FFC's objection to reopening coupled with its fierce allegations of Machiavellian-level wrongdoing by the Debtor, the focus should be on getting the issues resolved in the correct way based upon the evidence rather than rushing to make sure the issues are resolved quickly. These issues have arisen by no fault of the Debtor but result from the truncated scheduling order, the imminently scheduled hearing, and FFC's desire and insistence to conduct discovery depositions in this matter. Debtor believes, as the Court stated during the August 26, 2025 status conference, that the issues in this matter will rise and fall with the hearing testimony. However, these sensitive issues need attention to facilitate that testimony.

    **C. The Elephant in the Room**

While Debtor respects this Court's decision on FFC's standing, the cases the Court relied on are clear that parties who have marginal interests in bankruptcy estates should not be permitted to hijack the proceedings and make them more difficult or time consuming. *See In re AIO US, Inc.*, No. 24-11836 (CTG), 2025 WL 1617477, at *8 (Bankr. D. Del. June 6, 2025) ("Nothing in [*Truck Ins. Exch., Inc. v. Kaiser Gypsum Co.*, 602 U.S. 268, 284 (2024)] should be read as an invitation for parties without a legitimate interest in the bankruptcy case to weaponize the right to participate for improper purposes.") That is exactly what is occurring here. Determining how this lawsuit ended up on a "Statement of Financial

Affairs" as opposed to a "Schedule B" should be able to be determined quickly and easily. If FFC were not involved, armed with allegations of fraud and intentional wrongdoing, the Court could hear from Debtor, his counsel, and the trustee and make a decision on what should be a rather perfunctory motion. FFC knows that Otha Delaney played no part in deciding where this case was listed in forty-four pages of bankruptcy filings or how its legal status was described. FFC also knows that in 2013, Delaney only sought approximately $5,300 for his claim, and, after attorney fees and cost, that amount would likely be reduced to around $2,000. And notwithstanding the Court's ruling that FFC may have continued to have "creditor" status in 2013, Debtor's attorney (Mr. Drose) testified that he subjectively did not consider FFC a creditor, and that is why FFC was not listed as a creditor. Therefore, even if the state court action had been perfectly described in the perfect place in 2013, Debtor's interest would have been exempted. And, even if that were not the case, just as Delaney's 2024 trustee did not have any interest in the claim (despite the fact that the case was now certified as a class action and interest on the $5,300 increased the value of the claim to approximately $20,000) the trustee abandoned the claim without even making a phone call to inquire about administering the claim. Finally, and irrespective of all the issues above, a bankruptcy trustee could never administer Debtor's individual claim in a way that would result in a dismissal of the claims that belong to hundreds if not thousands of absent class members' claims. That could not happen in 2013, and it cannot happen now. FFC's effort to leverage these proceedings for an advantage in the state court should be closely considered now, particularly in light of the recent motions filed by the intervenors. Said differently, the Court should not continue to extend an invitation for parties without a legitimate interest in the bankruptcy case to weaponize the right to participate. As this Court has stated, and FFC impliedly acknowledged, **the class itself would still go forward, which is all the more true now that Intervenors have moved to intervene.**

**Conclusion**

The elephant in the room is that, irrespective of Debtor's individual claim, the class action is going forward. Therefore, Debtor respectfully moves this Court to a) continue the September 9, 2025 hearing because of unexpected discovery issues, b) temporarily stay these proceedings pending resolution of other class members' intervention motion soon to be resolved by state court, or c) grant Debtor permission to withdraw his Motion to Reopen without prejudice on terms that he will protect and preserve any individual financial recovery he, or his potential bankruptcy estate, may be entitled to in the future.

TWENGE + TWOMBLEY LAW FIRM

BY:  \_s/J. Ashley Twombley_____
J. ASHLEY TWOMBLEY
S.C. Bar #72916
Fed ID #9388
311 Carteret Street
Beaufort, SC  29902
 (843) 982-0100
twombley@twlawfirm.com

and

J. Ronald Jones Jr., Esquire
Fed ID #5874
Smith Debnam Narron Drake Saintsing & Myers, LLP
171 Church Street, Ste 120C (29401)
P.O. Box 22795
Charleston, SC  29413
(843) 714-2533
rjones@smithdebnamlaw.com

*Attorneys for Debtor, Otha Marvin Delaney*