**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **13-00446-jd**

## Amended Order Concerning First Financial of Charleston, Inc.'s Objection to Debtor's Motion to Reopen

The relief set forth on the following pages, for a total of 17 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**11/17/2025**



*S. Jefferson Davis IV*
US Bankruptcy Judge
District of South Carolina

Entered: 11/17/2025

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Otha Marvin Delaney,<br><br>　　　　　　　Debtor(s). | C/A No. 13-00446<br><br>Chapter 7<br><br>**AMENDED ORDER**[1] **CONCERNING FIRST FINANCIAL OF CHARLESTON, INC.'S OBJECTION TO DEBTOR'S MOTION TO REOPEN** |

**THIS MATTER** is before the Court on the Objection[2] by First Financial of Charleston, Inc. ("First Financial") to a Motion to Reopen[3] filed by Otha Marvin Delaney ("Debtor"). Debtor and First Financial have been engaged in a civil action for the past fourteen years (the "State Court Litigation")[4]. That litigation is now at the summary judgment stage,[5] where First Financial argues that Debtor should be barred from maintaining the State Court Litigation based on his failure of disclosure in this case. Debtor seeks to reopen this twelve-year-old bankruptcy case to list the cause of action against First Financial as an asset of this estate.

As a threshold matter, Debtor raised whether First Financial has a right to be heard on the Motion to Reopen and standing to object. Both parties filed statements of dispute on July 14, 2025.[6] In his statement, Debtor objected to any

---

[1] This order amends the order entered August 12, 2025. The motion of Otha Marvin Delaney to alter or amend that order is granted in part. The Court amends page 10 of this order pursuant to Fed. R. Bankr. P. 9023.
[2] ECF No. 22.
[3] ECF No. 19.
[4] *Otha Delaney v. First Financial of Charleston Inc.*, Case No. 2011-CP-10-07166 (S.C. Ct. Com. Pl., Charleston Cnty., filed Oct. 4, 2011)
[5] ECF No. 22, p. 8, ¶ 47.
[6] ECF Nos. 28 and 29.

1

witness testimony or evidentiary hearing until this issue was determined. The Court held a hearing on standing on July 16, 2025. The parties agreed that an evidentiary hearing on this issue was unnecessary as the matter was purely a question of law.[7] At the conclusion of the hearing, the Court orally ruled that First Financial had standing to object to the Motion to Reopen and continued the hearing on the merits of Debtor's Motion to Reopen until September 9, 2025.

## FACTS AND PROCEDURAL BACKGROUND

On October 4, 2011, Debtor filed a class action in the Charleston County Court of Common Pleas against First Financial, alleging that First Financial violated the South Carolina Commercial Code related to its collection efforts against Debtor and other putative class members. Debtor is the lead plaintiff of the class. The State Court Litigation is not yet resolved. The nearly fourteen-year procedural history of the State Court Litigation is complex, but the facts relevant to this matter are simple.

The parties agree that Debtor entered into a retail installment sales contract to purchase a vehicle in October of 2007. First Financial was the secured party to that contract. Debtor defaulted on the loan contract. In the spring of 2008, First Financial repossessed the vehicle. Debtor's state court complaint alleges that Debtor, and others similarly situated, were not provided proper notice of disposition under the UCC when their collateral was sold.

---

[7] First Financial argues that it also purchased another creditor's claim, to solidify its own standing to object, and attempted to enter the assignment agreement at the hearing. Debtor objected to the evidence of assignment being introduced. The objection was sustained for lack of foundation. *See* Transcript of Hearing Held on July 16, 2025, at 59: 25–61:3, *In re Delaney*, C/A No. 13-00446-JD (Bankr. D.S.C. January 24, 2013), ECF No. 41.

2

On January 24, 2013, Debtor filed this Chapter 7 bankruptcy case. First Financial was not scheduled as a creditor and the State Court Litigation was listed as "dismissed" in the Statement of Financial Affairs.[8] Debtor did not schedule the State Court Litigation as an asset in Schedule B nor did he exempt any recovery from the action in Schedule C. First Financial asserts that the State Court Litigation was, in fact, not dismissed at the time of the petition or at the time the chapter 7 trustee filed his report of no assets.[9]

Debtor now asks the Court to reopen the 2013 bankruptcy case, for the purpose of amending schedules to "list and describe the [l]awsuit in a more fulsome manner."[10] First Financial opposes the relief because its recent motion for summary judgment in the State Court Litigation is pending before the trial court and reopening this case may impact that proceeding.

## ANALYSIS AND CONCLUSIONS OF LAW

Chapter 7 debtors must file schedules that list and describe all of their assets, including legal claims against others. 11 U.S.C. § 521(a)(1)(B)(i). When a chapter 7 case is closed, assets that the debtor scheduled but the trustee did not administer are automatically "abandoned," meaning they revert to the debtor's ownership. 11 U.S.C. § 554(c). But any assets that the debtor failed to schedule are not abandoned and instead remain property of the estate. 11 U.S.C. § 554(d). Debtor

---

[8] *See* ECF No. 1.
[9] From the state court's records, it appears the State Court Litigation was dismissed prior to Debtor's discharge by the trial judge. On appeal, the trial court's order granting dismissal was reversed and the State Court Litigation has continued. *See Delaney v. First Fin. of Charleston, Inc.*, 418 S.C. 209, 211, 791 S.E.2d 546, 547 (Ct. App. 2016), *rev'd*, 426 S.C. 607, 829 S.E.2d 249 (2019).
[10] ECF No. 19, p. 2, ¶ 9.

3

now seeks to correct a misstep in his original filing to disclose the State Court Litigation as an asset that may either be administered by a trustee or abandoned to him.

There are two threshold issues the Court must determine prior to hearing the merits of Debtor's Motion to Reopen. First, whether First Financial has a statutory right to be heard on its objection. Second, if it does have a right to be heard, whether that right is constrained by traditional Article III standing requirements.

Debtor contends[11] First Financial lacks both the right to be heard under the Bankruptcy Code and standing under Article III of the United States Constitution to object to his Motion to Reopen because First Financial's only demonstrated interest in this matter is the potential effect that reopening the case might have on the State Court Litigation.[12] This Court has previously found that a defendant to a state court action lacks standing to oppose reopening. *In re Boyd*, 618 B.R. 133, 160 (Bankr. D.S.C. 2020). However, the facts of *Boyd* were very different from the facts of this case. In *Boyd*, a debtor sought to reopen a chapter 13 case to disclose a post-petition cause of action and the party opposing reopening had no stake in the outcome of the bankruptcy case. In this case, the State Court Litigation was initiated pre-petition and remains pending against First Financial in its capacity as a former secured creditor of property pledged by Debtor. Debtor nevertheless avers First Financial is not presently a creditor. Debtor alleges that First Financial has

---

[11] *See* ECF No. 26 ("Debtor's Response to First Financial's Objection"), pp. 5–6.
[12] *See* Debtor's Response to First Financial's Objection, p. 4.

4

not provided any evidence of its secured, unfulfilled lien against Debtor,[13] of its acquisition of another creditor's claim,[14] or of any pecuniary interest that would be directly affected by the reopening of this case. Debtor also contends that the statute of limitations has barred First Financial from seeking any additional recovery from Debtor under the 2007 contract.

First Financial disagrees, contending it has both a statutory right to be heard as a "party in interest" and, to the extent it is required, Article III standing to object. On both of these issues, the Court agrees with First Financial.

## I. Right to be Heard as a Party in Interest

"A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C § 350(b). Fed. R. Bankr. P. 5010 allows a case to be reopened "on motion of the debtor or **a party in interest** pursuant to § 350(b) …" Fed. R. Bankr. P. 5010 (emphasis added). However, the right to oppose a motion to reopen is not specifically addressed in the Bankruptcy Code or Rules. Courts considering the issue focus on whether the objecting party is a "party in interest." *See In re Malin*, 652 B.R. 828, 831-32 (Bankr. N.D. Ga. 2023). This Court agrees. If a party in interest has a right to raise an issue, it follows that the party in interest has the right to be heard when the issue is raised by another, and their rights would be impacted by the outcome.

"Party in interest" is not defined in the Bankruptcy Code, but the Fourth

---
[13] *See* Debtor's Response to First Financial's Objection, pp. 3–4.
[14] *See* Debtor's Response to First Financial's Objection, pp. 6–7.

5

Circuit has indicated that a "party in interest" for bankruptcy purposes includes "'all persons whose pecuniary interests are directly affected by the bankruptcy proceedings.'" *In re Boyd*, 618 B.R. at 146 (quoting *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 756 (4th Cir. 1993)) (internal citations omitted).

For additional guidance in determining who qualifies as a "party in interest," many courts look to the definition set forth in 11 U.S.C. § 1109(b). Section 1109(b) states that a "party in interest" includes, but is not limited to, "the debtor, the trustee, a creditor's committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee..."

The Supreme Court has recently discussed the meaning of the term, holding "party in interest" is "capacious" and covers any party whose "financial exposure may be directly and adversely affected by a plan ...." *Truck Ins. Exch., Inc. v. Kaiser Gypsum Co.*, 602 U.S. 268, 284 (2024). "This understanding aligns with [the Supreme Court's] observation that Congress uses the phrase 'party in interest' in bankruptcy provisions when it intends the provision to apply 'broadly.'" *Id.* at 278 (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, (2000)); *see also* 11 U.S.C. § 502(a). While § 1109(b) is limited[15] to cases under chapter 11, this Court and others have applied the "party in interest" concept to analyze the term as it pertains to a party's right to be heard in Chapter 7 cases. *See*

---

[15] The Supreme Court has cautioned against using the term beyond the scheme to which it is related but notes that the term has been construed in other contexts as including those directly and adversely affected by the outcome of a proceeding. *Truck Ins. Exch.*, 602 U.S. at 279, n.4 (citing *Western Pacific California R. Co. v. Southern Pacific Co.*, 284 U.S. 47, 51–52 (1931)).

6

*In re Taylor*, No. CA 11-00156-DD, 2011 WL 3206994, at *3 (Bankr. D.S.C. July 27, 2011) (finding that a creditor in a chapter 7 case is a party in interest under § 1109 and therefore may object to the Trustee's motion to sell property of the estate free and clear of liens).

As discussed below, First Financial is a creditor with a pecuniary interest in the estate that may be directly affected if this case is reopened. Therefore, under the big tent interpretation of *Truck Ins. Exch.*, First Financial is a party in interest with a right to be heard on Debtor's requested relief.

### a. First Financial's Status as a Creditor

"The terms 'debt' and 'claim' are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." S.Rep. No. 989, 95th Cong., 2d Sess. 23, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5809; H.R.Rep. No. 595, 95th Cong., 2d Sess. 310, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6267. "By this broadest possible definition ... the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." S.Rep. No. 595, 95th Cong., 2d Sess. 22, reprinted in 1978 U.S.C.C.A.N. 5787, 5808; H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 309, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6266.

This statutory intent is reflected in the Code's definition of "claim" as a "right to payment." 11 U.S.C. § 101(5). Even a claim that is disputed is nevertheless a claim as the Code defines the term. *In re Knight*, 55 F.3d 231, 234 (7th Cir. 1995). A "creditor," in turn, is defined as an entity holding a "claim against the debtor." 11 U.S.C. § 101(10). Again, regardless of whether the claim is disputed, the claim

7

holder is still treated as a creditor in a bankruptcy case. *B-Real, LLC v. Chaussee (In re Chaussee)*, 399 B.R. 225, 233 (B.A.P. 9th Cir. 2008).

State law usually determines whether a party has a "right to payment." *Midland Funding, LLC v. Johnson*, 581 U.S. 224, 228 (2017). Actions to recover debts in South Carolina must generally[16] be brought within three years of the default on the debt. S.C. Code Ann. § 15–3–530 (2015). This bar only effects the remedy available to a collecting party rather than the underlying right: it does not erase the debt. *In re Vaughn*, 536 B.R. 670, 677 (Bankr. D.S.C. 2015) (internal citations omitted); *Amaker v. New*, 33 S.C. 28, 11 S.E. 386, 387 (S.C. 1890) (holding under South Carolina law that the statute of limitations "does not operate as the payment of the debt"). An unenforceable obligation is nonetheless a "right to payment," and therefore a "claim," under the Bankruptcy Code. *Midland Funding*, 581 U.S. 224 at 229.

First Financial asserted that, after the repossession and liquidation of Debtor's vehicle, Debtor owed a balance of $4,187.57. Debtor asserts First Financial was not a creditor when this bankruptcy case was filed and, therefore, not a party in interest, because any claim First Financial may have had was stale. However, Debtor's Response to First Financial's Objection concedes that Debtor and First Financial entered into a loan agreement in 2007, and Debtor breached the loan agreement in the same year.[17] Further, at the hearing, Debtor's counsel agreed that

---

[16] Actions for breach of a bond, a contract secured by a mortgage of real property, and certain sealed instruments must be brought within 20 years under S.C. Code Ann. § 15–3–520 (2015). As First Financial's loan was secured by Debtor's vehicle, and not real property, the three year limitation period prescribed in § 15–3–530 applies.

[17] *See* ECF No. 26, p. 3.

8

it was "beyond dispute" that after Debtor's default on the loan agreement, First Financial sent Debtor a demand letter, declared Debtor in default, repossessed Debtor's vehicle, sold the vehicle, and notified Debtor via letter that he still owed First Financial money after the proceeds from the sale of the vehicle were applied to his deficiency.[18] By Debtor's own description, First Financial had a claim for a deficiency against Debtor. Though that claim may be stale, First Financial is still a "creditor" as that term is defined in the Code. *See Amaker v. New*, 33 S.C. 28, 11 S.E. at 387; *Midland Funding*, 581 U.S. 224 at 229. Whether First Financial's claim would ultimately be allowed is an issue for another day, but the Supreme Court's holding in *Midland Funding* is clear: the Court should not speculate as to what may happen during the claim allowance process when making this threshold determination as to whether First Financial is a creditor. Since First Financial is a creditor, it has statutory right to be heard as a party in interest to oppose Debtor's Motion to Reopen.

    **b. First Financial's Status a Party with a Pecuniary Interest**

Moreover, the State Court Litigation is premised on the existence of a pre-petition creditor/debtor relationship between First Financial and Debtor and should have been disclosed as an asset. 11 U.S.C. § 521(a)(1)(B)(i). Rather than schedule the State Court Litigation as an asset, Debtor only disclosed the action in the Statement of Financial Affairs as a dispute that ended prior to the commencement of this bankruptcy case. Had Debtor properly scheduled the State Court Litigation,

---

[18] *See* ECF No. 41, 23: 24–24:3.

the action would an asset for the trustee to administer.

Debtor, arguably, is not the real party in interest in the State Court Litigation, following the filing of his 2013 chapter 7 petition.[19] *Martineau v. Weir*, 934 F.3d 385, 391 (4th Cir. 2019). First Financial has incurred costs defending the suit since this bankruptcy case was filed. Debtor's requested relief may further prolong the litigation, require First Financial to dedicate additional resources to its defense, and blunt First Financial's ability to use a judicial estoppel defense in the State Court Litigation. *See Smidt v. Nationstar Mortgage LLC (In re Smidt)*, No. BAP CC-24-1071-FGL, 2025 WL 863113, at *7 (B.A.P. 9th Cir. Mar. 19, 2025) (holding a defendant in state court litigation brought by the debtor had standing as a party in interest to object to the debtor's motion to reopen the case because if the case had been reopened, the defendant would have had to incur additional attorneys' fees defending against the debtor's state court claims and might have lost a judicial estoppel defense). The costs First Financial has and will continue to incur in defending the State Court Litigation are a pecuniary interest directly affected by this bankruptcy imbuing First Financial with statutory status as a party in interest. *In re Boyd*, 618 B.R. at 146.

## II. Article III Standing

Questions concerning the right to be heard as a party in interest in a bankruptcy case are often considered alongside questions of constitutional standing. Because this Court traffics in assets, obligations, and the adjustment of the

---

[19] This sentence is amended from Order entered August 12, 2025.

debtor/creditor relationship, the overlap between the two is nearly seamless. However, the Circuits are split over whether the "right to be heard" as a party in interest incorporates Article III's requirements for standing or imposes more stringent limitations.[20]

Debtor asserts that First Financial must also have Article III standing for the Court to consider its objection. Debtor cites this Court's opinion in *Boyd* in support of this assertion. However, the facts of *Boyd* are different and, since that case was decided, the Fourth Circuit and the Supreme Court have cast doubt on the notion that a party objecting to relief in this Court must demonstrate Article III standing to be heard.

As courts are split on whether the party in interest standard equates to Article III standing, the courts are also split on whether Article III's case-or-controversy requirement even applies to this Court. The Third, Seventh, Eighth, and Tenth Circuits have reasoned that Article III standing requirements apply in proceedings before bankruptcy courts because Article III limitations apply to federal courts and bankruptcy courts are federal courts, without analyzing the issue further.[21] In contrast, the Fifth Circuit has concluded that Article III standing

---

[20] *Compare In re Global Indus. Techs., Inc.*, 645 F.3d 201, 211 (3d Cir. 2011) (bankruptcy standing is coextensive with Article III standing) *with Hughes v. Tower Park Props., LLC (In re Tower Park Props., LLC)*, 803 F.3d 450, 456–57, n.6 (9th Cir. 2015) (bankruptcy standing is more restrictive than Article III standing); *see also Carl F. Schier PLC v. Nathan (In re Cap. Contracting Co.)*, 924 F.3d 890, 895 (6th Cir. 2019). They are also split over whether it applies outside of Chapter 11 bankruptcies. *See Id*. The Fourth Circuit has declined to explicitly confront either of these questions. *See Kiviti v. Bhatt*, 80 F.4th 520, 534, n.11 (4th Cir. 2023).

[21] *See In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) ("To object to the confirmation of a reorganization plan in bankruptcy court, a party must, in the first instance, meet the requirements for standing that litigants in all federal cases face under Article III of the Constitution."); *Rosenfeld v. Rosenfeld (In re Rosenfeld)*, 698 F. App'x 300, 303 (6th Cir. 2017)

11

requirements do not apply to bankruptcy courts because bankruptcy courts are not authorized by Article III.[22]

The Fourth Circuit has recently issued conflicting decisions on whether Article III jurisdictional constraints apply to bankruptcy courts: *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc. (In re Kaiser Gypsum Co., Inc.)*, 60 F.4th 73 (4th Cir.), *cert. granted sub nom.*, 144 S. Ct. 325 (U.S. Oct. 13, 2023) (No. 22-1079), *and rev'd and remanded sub nom., Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268 (2024), and *Kiviti v. Bhatt*, 80 F.4th 520 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2519 (May 13, 2024) (No. 23-729).

In *Kaiser Gypsum*, the Fourth Circuit held an insurer could not object to the debtor's chapter 11 plan because it failed to establish an injury in fact and therefore did not demonstrate its standing to object under Article III, which is "still required in every case." *Id.*, 60 F.4th 73, 88; n.10. The Fourth Circuit further held that the

---

(applying the case or controversy requirement to adversary proceedings in bankruptcy courts and asserting federal courts "may decide only 'cases' and 'controversies.'"); *GAF Holdings, LLC v. Rinaldi (In re Farmland Indus., Inc.)*, 639 F.3d 402, 405 (8th Cir. 2011) (Article III standing before a bankruptcy court is required because "federal courts must ensure that Article III standing exists."); *Pettine v. Direct Biologics, LLC (In re Pettine)*, 655 B.R. 196, 207 (10th Cir. BAP (Colo.) 2023) (holding Article III standing limits the jurisdiction of bankruptcy courts "based on the derivative nature of bankruptcy court jurisdiction."). The courts which hold that Article III case or controversy limitations apply to bankruptcy court proceedings generally arrive at that conclusion due to the fact that bankruptcy courts derive their jurisdiction through the same statutory jurisdictional provision as the district courts, 28 U.S.C. § 1334, with all bankruptcy cases, matters, and proceedings being referred to the bankruptcy courts by the district courts through general orders of reference.

[22] *NexPoint Advisors, L.P., v. Pachulski Stang Ziehl & Jones, L.L.P. (In re Highland Cap. Mgmt., L.P).*, 74 F.4th 361, 366 (5th Cir. 2023) ("Bankruptcy courts are not authorized by Article III of the Constitution, and as such are not presumptively bound by traditional rules of judicial standing."); *Furlough v. Cage (In re Technicool Sys., Inc.)*, 896 F.3d 382, 385 (5th Cir. 2018) ("Bankruptcy courts are not Article III creatures bound by traditional standing requirements."). The Fifth Circuit's conclusions in *Highland Capital Management* and *Technicool* that bankruptcy courts are not subject to Article III jurisdictional constraints are arguably dicta because, in both cases, the court concluded that the "person aggrieved" test, which applies to standing to appeal a bankruptcy court decision, is more stringent than the Article III standing requirement and the appellant in each case did not satisfy that requirement. 74 F.4th at 366–67, 896 F.2d at 385–86.

12

insurer lacked standing as a party in interest under 11 U.S.C. § 1109 because the plan, under which the insurer's general unsecured claim was fully satisfied, did not affect the insurer's legally protected interest. *Id.*

Following appeal, *Kaiser Gypsum* was reversed and remanded. *See Truck Ins. Exch.*, 602 U.S. 268 (2024). The Supreme Court held that the insurer was a party in interest with standing to object to the plan due to its financial responsibility for claims against the debtor under 11 U.S.C. § 1109 and did not address the Fourth Circuit's holding that standing under Article III is required for parties raising objections in bankruptcy cases.[23] *Id.*, 602 U.S. at 280–281.

In *Kiviti v. Bhatt*, the Fourth Circuit held once a case is validly referred to a bankruptcy court under 28 U.S.C. § 157, the constraints of Article III—such as mootness, or the case-or-controversy requirement—no longer apply as a matter of constitutional law. *Id.*, 80 F.4th at 536. The Fourth Circuit reasoned that a district court can only refer a case that it has jurisdiction over to a bankruptcy court, and as every action by a district court is constrained by Article III, any case that is referred to the bankruptcy court must satisfy Article III. *Id.*, 80 F.4th at 533 (citing *Ex parte McCardle*, 74 U.S. 506, 514 (1868); *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012); and *Croniser v.*

---

[23] The Bankruptcy Court for the District of Delaware held that recent Supreme Court authority, including *Truck Ins. Exch.*, indicate that a party objecting to relief in bankruptcy court does not need to demonstrate Article III standing to be heard on the basis that the objecting party is not invoking the court's jurisdiction. *In re AIO US, Inc.*, No. 24-11836 (CTG), 2025 WL 1617477, at *7 (Bankr. D. Del. June 6, 2025). In the context of *Truck Ins. Exch.*, the District of Delaware specifically noted "if the Supreme Court believed that the question of insurer standing to object to confirmation implicated Article III of the Constitution, [one would expect] the Court to have considered and addressed that question before turning to the statutory issue." *Id.*, 2025 WL 1617477, at *4.

13

*Butler (In re Croniser)*, No. 22-1227, 2022 WL 7935991, at *1 (4th Cir. Oct. 14, 2022) (unpublished)).

However, "[o]nce a case is validly referred to the bankruptcy court, the Constitution does not require it be an Article III case or controversy for the bankruptcy court to act," as the Article III case or controversy requirement comes from the Constitution's limits on judicial power, and Bankruptcy Courts do not wield judicial power. *Id*. (citing *In re Technicool Sys., Inc.*, 896 F.3d 382, 385 (5th Cir. 2018)) ("Bankruptcy courts are not Article III creatures bound by traditional standing requirements."). Further, the Fourth Circuit reasoned that bankruptcy courts, "as statutory creatures, have whatever power Congress lawfully gives them." *Id*. 28 U.S.C. § 157(b)(1) grants bankruptcy courts power to "hear and determine all [bankruptcy] cases … and all core proceedings … referred" to them by a district court—not just those proceedings that could be fully adjudicated in a district court. *Id.*, 80 F.4th at 533 (4th Cir. 2023). As 28 U.S.C. § 157(b)(1) does not include language requiring proceedings before a bankruptcy court meet Article III's "case or controversy" requirement, the Fourth Circuit declined to impose such a requirement. *Id.*, 80 F.4th at 534 (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 96 (2012)) ("[W]hat a text does not provide is unprovided.").

The Fourth Circuit does not render an explicit holding as to whether Article III standing is required for parties raising objections in bankruptcy courts in *Kiviti*.

14

The Court need not reconcile the divergent interpretations of 28 U.S.C. § 157[24] in this case, because, if Article III standing is required, First Financial has it.[25]

"To establish constitutional standing, the party must first 'have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]'" *In re Boyd*, 618 B.R. 133, 146 (Bankr. D.S.C. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted). Second, the party must establish that the injury in fact is traceable to the conduct at issue. *Lujan*, 504 U.S. at 560. "Finally the party must show that it is 'likely', as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)).

Debtor's Response to First Financial's Objection[26] accurately notes this Court has found the defendant in a debtor's post-petition tort suit lacked constitutional standing to file a motion to reconsider an order reopening the debtor's bankruptcy case based on the potential loss of a defense in the tort suit, which the Court deemed too speculative to constitute an injury in fact. *See In re Boyd*, 618 B.R. at 146. However, unlike the defendant in *Boyd*, First Financial's injury in fact does not depend on the outcome of an unscheduled claim. First Financial has suffered an injury in fact: it has incurred costs over the last 12 years defending the State Court

---

[24] *See,* supra, n. 21, n. 22. *See also White-Lett v. NewRez, Inc.*, 661 B.R. 63, 84 (N.D. Ga. 2024).
[25] *See Sanders v. First Recovery, LLC*, No. 5:23-CV-00553-FL, 2024 WL 4164163, at *3, n.5 (E.D.N.C. Aug. 6, 2024).
[26] *See* ECF No. 27, p. 4.

15

Litigation, which was initiated pre-petition and that Debtor may have had no right to pursue once this case was filed. Those costs are not speculative. *See In re Smidt*, 2025 WL 863113, at *6 (holding that a state court defendant's litigation costs, incurred over eight years defending a lawsuit that the debtor failed to properly schedule in his Chapter 7 case, were an injury in fact and the defendants therefore had Article III standing to object to the debtor's third motion to reopen the case). Debtor's requested relief could further prolong the State Court Litigation and require First Financial to dedicate additional resources to its defense. At this stage, First Financial has made sufficient factual allegations of an injury in fact to support standing under Article III to object to Debtor's Motion to Reopen the case. That injury is traceable to conduct of Debtor and may be redressed by hearing the merits of both Debtor's Motion to Reopen and First Financial's opposition to it.

A hearing on the merits of Debtor's Motion to Reopen and the objection by First Financial shall be heard on September 9, 2025. In addition to the requirements of the Scheduling Order entered July 22, 2025, the parties are directed to file a **joint** statement of dispute on or before September 2, 2025, using the appropriate local form.

**AND IT IS SO ORDERED.**

16